WESTERN UNION TELEGRAPH COMPANY *v.* WESTBROOK.

Opinion delivered December 1, 1913.

1.  TELEGRAPH COMPANIES—DELIVERY OF JOINT MESSAGE.—A joint message may be delivered to either of the addressees, and a delivery to one will be held to be a delivery to both. (Page 334.)

2.  TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE PROMPTLY—NEGLIGENCE.—In an action by the addressee of a telegram against a telegraph company for damages for failure to deliver a message promptly, advising the addressee of the illness of her husband, *held,* it was not the duty of the defendant company to attempt to deliver the message beyond the corporate limits of the town where it was received, and that where the addressee lived beyond the corporate limits of the town, it was proper to mail the telegram to the addressee. (Page 334.)

3.  TELEGRAPH COMPANIES—LIABILITY FOR NONDELIVERY BEYOND FREE DELIVERY LIMITS.—Where the addressee of a telegram lived outside the corporate limits of the town where the message was received, and beyond the free delivery limit, the telegraph company will not be held liable for damages for failure to deliver the message to the

addressee, when the sender made no provision for paying for the expense of delivery. (Page 335.)

Appeal from White Circuit Court; *Eugene Cypert,* Special Judge; reversed and dismissed.

### STATEMENT BY THE COURT.

Appellee alleged in her complaint that appellant was a corporation, operating a line of telegraph from Saltillo, Texas, to Beebe, Arkansas, and that on January 4, 1912, one Walter Everett, delivered to the defendant company at Saltillo, a message directed to her at Beebe, advising her that her husband, who was then at Saltillo, was very ill, and that on the next day the said Everett delivered another message to the defendant directed to appellee in the following words: "Bert died today. Interment here tomorrow unless you advise to the contrary."

That the said Everett paid the customary price for the transmission and delivery of said messages to the appellant, but they were not delivered within a reasonable time, or within any other time; that her husband died on the 5th of January, 1912, and was buried without her knowledge of even his serious illness; that if the telegram had been properly transmitted to her, she could and would have attended her husband in his last illness and have brought his remains to her home at Beebe where she could have attended his funeral. She alleged that because of appellant's negligence in failing to transmit and deliver the message she suffered great grief and mental anguish, and prayed judgment in the sum of $2,999.

The answer denied all negligence, but admitted receipt of the message, and alleged they were promptly transmitted, and that appellant was guilty of no negligence in their delivery and alleged further that appellee could not have reached her husband before his death, but that the messages were delivered in time for her to have given directions about his funeral and to have attended it at Saltillo, or to have made arrangements for it at Beebe.

There appears to have been no controversy as to what happened at Saltillo. Mr. Everett sent four messages; the first of which was dated 3:30 P. M. on January 4, 1912, and was addressed to appellee individually, and read as follows: "Bert Westbrook seriously ill. Answer."

A second telegram was sent at 3:47 P. M. on the 5th and was addressed to John and Rosa Westbrook, Beebe, Arkansas, and read as follows: "Bert dying. Answer collect." The third telegram which has been set out in full was addressed to John and Rosa Westbrook and advised them of the death and day of the interment, unless instructions to the contrary were received. That telegram was dated 4:30 P. M. of the 5th. A fourth and last telegram was sent by Everett on the 6th, acknowledging the receipt of a telegram sent to him by John Westbrook in regard to the funeral arrangements.

The complaint sets out the first and third telegrams and makes no mention of the second, although appellee denied receiving any of them.

The evidence in the case was substantially as follows:

One Armspaugh testified that he was the appellee's father and that she was living with him during the month of January, 1912, and had been for some time prior thereto, and that he was well known in and around Beebe, and that he got the telegram addressed to Mrs. Westbrook out of the postoffice on the morning of January 6, between 8:00 and 9:00 o'clock, and that the envelope showed that it had been mailed at ................ P. M., January 4, 1912, and the first they had ever heard of any of the telegrams was on the night of the 5th, when they were advised by a negro named Love of the first telegram and its contents. Witness lived three-quarters of a mile beyond the corporate limits of the town of Beebe, and something more than a mile from the telegraph office. Appellee testified that she only received the telegrams, herein designated as the first and third, and that the first telegram was delivered to her on the morning of the 6th,

and the other during the afternoon of that day.  She testified that had she received these telegrams she could and would have gone to her husband.  And there is some evidence, in addition to her own, which makes it appear not impossible, although highly improbable, that she might have reached her husband before the time of his death, which was shown to have occurred at 3:30 P. M., on the 5th, had the first telegram been delivered immediately after its receipt in Beebe; but she could have reached Saltillo before his funeral which occurred on the 6th.

John Westbrook, who was one of the addressees in the second and third messages, testified at first that he received both of those messages during the afternoon of the 6th, and that on the 7th he sent a message to Mr. Everett, saying:  "Bury Bert nicely; I will pay expenses."  But upon cross examination admitted that he had in fact received both messages about 5:00 P. M. on the evening of the 5th, although he still contended he had gotten them on that date through the postoffice, and not from the telegraph operator.

The evidence upon the part of the appellant was to the following effect:  Garrison, the operator at Beebe, testified that upon receipt of the message addressed to Mrs. Rosa Westbrook, individually, which was received at his office in connection with one addressed to John Westbrook individually, he went to the store of a man named John Westbrook and gave him the telegram bearing that address, and upon its being torn open and read, Westbrook advised him who the addressees were. Thereupon the operator went to his office and enclosed the telegram in an envelope addressed to appellee, and gave it to his porter with directions to make inquiry about town for the addressees and to deliver, if he could, or send the telegram to her if he saw an opportunity to do so, and, if not, to mail the telegram at the postoffice.  The witness wired the operator at Saltillo to the following effect: "Your two messages date Westbrook signed Everett undelivered.  Parties live two miles in the country.  Have

mailed copies.'' This witness further testified that while
he was receiving the message stating that deceased was
dying, John Westbrook, the deceased's brother, came
into his office and began writing a telegram, but before
he had finished doing so, witness gave him the telegram
he had just received, and Westbrook left the office with-
out finishing the telegram; that within a few minutes
Westbrook came again into his office while witness was
receiving the third telegram containing the notice of de-
ceased's death, and that this telegram was delivered in
the office immediately upon its receipt. This witness tes-
tified that Westbrook returned again and at 8:00 A. M.
on the morning of the 6th, sent to Everett the telegram
containing the directions in regard to the burial, and the
promise to pay the expense thereof.

The assistant postmistress testified that the porter
mailed two telegrams on the evening of the 4th; one ad-
dressed to the appellee Rosa Westbrook and the other to
John Westbrook, and asked her to assist him in deliver-
ing them as soon as possible.

The porter testified that he knew appellee, but did
not expect to find her in town on the afternoon of the
4th because of the severity of the weather; but he thought
he might find some one to whom he could deliver the mes-
sage, and that after spending about twenty-five minutes
in that attempt, he deposited the telegram in the post-
office. A negro, named Pleas Love, testified that Mr.
John Westbrook, who lived in the city of Beebe, and to
whom the telegram had been first erroneously delivered
by the operator, asked witness to notify appellee of the
telegram and its contents, and witness stated that he
passed the home of Mr. Armspaugh about 5:00 o'clock
in the afternoon of the 4th, and told Armspaugh of this
message, and its contents. The witness is very positive
at to the date, but the jury evidently did not believe his
statements.

The operator at Saltillo testified that after receiving
the message from the operator at Beebe advising him of
the non-delivery of the telegrams and stating the reasons

therefor, that he immediately called Mr. Everett, the sender of the telegrams, over the phone, and told him what had been done, and that Mr. Everett had said that it was satisfactory to him to have the telegrams mailed, and there was no request to have them delivered in the country nor offer made to pay the charges for doing so. He testified further that when the messages addressed to John and Rosa Westbrook jointly were sent by him that he advised the operator at Beebe the expense of their delivery would be guaranteed, but he was almost immediately notified by the operator at Beebe that there would be no charge for delivery, as the messages had been delivered directly upon their receipt. The telegram advising to that effect was received at 5:00 o'clock on the evening of the 5th.

Mr. Everett, the sender of the messages, testified that he was foreman of the mill at which deceased was working at the time of his illness, and that deceased had pneumonia and died after an illness of five days; that deceased was known to him as Harry Jones, and his name was so written on the time book; but that he found from some letters and scraps of paper on the person of the deceased showing what his true name was, and where his family lived, and that he sent the messages herein mentioned. He testified further that he received the message from John Westbrook on the 6th directing him to "Bury Bert nicely," and promising to pay the expenses of the funeral. He testified further that these expenses had never been paid, although appellee had promised to pay him out of the proceeds of this litigation.

The proof showed that Beebe was a town of less than 5,000 people, and that under the rules of the appellant company, which numerous cases in this and other States have held to be reasonable, a free delivery was not required beyond a radius of a half-mile from the telegraph office, and both Mrs. Westbrook and her brother-in-law, John Westbrook, lived at a greater distance than that beyond the corporate limits of Beebe.

Appellee introduced in evidence Rule No. 51 of the

appellant company which governs special deliveries and the charges therefor, and which reads as follows:

"If the service of a special messenger be required, and the special delivery charges have not been provided for, the sending office will promptly notify by telegraphing the cost of delivery, and that office will endeavor to collect the charges from the sender, who, if he pay or guarantee the delivery charges, will also pay for the message ordering a special delivery or guarantee the collection of the total thereon. If the sending office be unable to collect, or if a reply from the sending office be not promptly received, a copy of the message will be mailed to the addressee, and if another copy be afterward delivered, the word duplicate will be plainly written across its face."

*Geo. H. Fearons, E. L. McHaney* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

The evidence discloses that appellant did all that it was under any legal obligation to do, and that it was not guilty of any negligence. The case is governed by the decision in *King* v. *Western Union Telegraph Company,* 89 Ark. 402.

Delivery to John Westbrook of the messages addressed jointly to him and appellee, was a delivery to appellee. 37 Cyc. 1680.

*S. Brundidge,* for appellee.

The question of negligence was one exclusively for the jury under the evidence, and it can not be said that there was no evidence to sustain their finding on that issue. The questions raised by appellant have been decided adversely to it by this court in *Postal Telegraph & Cable Company* v. *Kellogg,* 103 Ark. 442. See, also, 75 Cent. Law Journ. 279; 148 S. W. 284; 98 Ark. 347; 96 Ark. 213; 45 S. E. 938; 54 S. E. 571; 43 S. E. 841; 101 Ark. 487.

SMITH, J., (after stating the facts). We have set out the evidence *in extenso* because of the view we take of it, and for the same reason we regard it as unneces-

sary to set out or discuss the instructions in this opinion. Appellee complains of the alleged negligent failure to deliver the messages, one addressed to her individually, and the other to her and John Westbrook jointly, the one advising her of her husband's illness, the other of his death. The first message she claims not to have been received until the morning of the 6th, and the other one not until the afternoon of that day. But a joint message may be delivered to either of the addresses, and a delivery to John Westbrook was a delivery to appellee of the message addressed to her and to him.

It is true John Westbrook did at first testify that the joint messages were not delivered until the afternoon of the 6th, and he contradicts the operator's statement that the delivery occurred in the telegraph office; but although he says he received the messages through the postoffice, he does admit on cross examination, after his recollection had been refreshed, that the messages were delivered to him on the afternoon of the 5th, and within a short time after their receipt for transmission at Saltillo. This brother lived a mile and a half from the town of Beebe, which was of course beyond the free delivery limits, and although the messages were put in the postoffice this proved to be a very expeditious method of delivering them to him. Nor does the proof show any negligence in failing to deliver the first telegram. Appellee resided beyond the free delivery limits, and there is nothing in the record to indicate that a delivery of the message could have been made within these limits. The evidence is undisputed that the weather was very inclement, and the colored porter, who knew appellee, testified that he had no hope of finding her in town on such a day, but that he looked around the town to find some one by whom he could send the message to the country and failing to find any one he deposited the telegram in the postoffice, after advising the postmistress of its presence there and of its contents, and after requesting that she deliver it as soon as possible. Nor do we think there was any negligent failure to observe the rule 51 offered in evidence.

This rule was substantially complied with. Immediately upon learning that appellee lived in the country, the operator at Beebe advised the operator at Saltillo of the conditions and of what he had done, and the operator at Saltillo immediately called Everett, the sender of the message, over the telephone, and Everett said it was satisfactory to him for the messages to be mailed in the postoffice. Under these circumstances appellant would have had no authority to incur any expense in the delivery of this message, and we think as a matter of law that appellant was guilty of no breach of duty in failing to deliver this message. *King* v. *Western Union Tel. Co.,* 89 Ark. 402.

The court below should, therefore, have directed a verdict in appellant's favor, and for its failure so to do the judgment must be reversed and the cause will now be dismissed.